Good morning, Your Honors. I'm Jeffrey Baird, representing Deborah Oberg. I wanted to hopefully get to three things today. One is the de facto reopening. Another is new evidence presented to the Appeals Council. And another is how to interpret the medical experts' testimony. Regarding the reopening, the plaintiff applied for a second time in October of 2005. That was two years after the original ALGA decision in August of 2003. So she applied two years later. The agency's initial denial was in December of 2005, so they denied her within two years of the prior ALGA's decision. Then it took some time, and the agency finally had an ALGA decision, an ALGA hearing, an ALGA decision. And a very interesting point in the ALGA's enumerated findings, the last one, I find her not disabled from May 2003 through the date last insured of June 2005, June 30, 2005. By doing that, he de facto reopened the earlier decision, which was issued August of 2003. He did it, in fact, he did it based on the medical experts' testimony, which covered the entire span all the way back to 1997. He may have said that in his factual findings, but it's pretty clear from his explanation, and even at the hearing, that he treated the prior decision as a final decision, and that she was presumed disabled from the beginning date of the new application. Well, I disagree. He was quite ambiguous. He said at one point during the hearing, it's all become part of the record as a whole. It's become an integral part of the record. Well, he had to look to see what was at issue in the prior case, correct? True. But when he issued his final decision, he didn't have to say, I find her not disabled from May 23 through 2005. But he expressly said then again, it's presumed. I'm following the presumption. In his final decision, he even said it. In fact, when he said it at the hearing, he asked counsel, you understand? Counsel, yeah, I understand. It's presumed. We're going on the presumption. Now, sure, if this whole thing is unclear and ambiguous is one thing, but when he makes it perfectly clear, he's doing the presumption? Well, again, I'll rest with disagreeing on that. There's one point that I guess it's the Social Security ALJ's manual. It does talk about where the second decision does cover a request for the prior period. Right. And there's no specific request in the application process. It's to be construed as an implied request to reopen. And that's also the third. But that seems to be what, you know, what the ALJ was sensitive to. All right. I'll move to the next issue. Well, I mean, you can say all right, but that's fine. Okay, well, I leave the disagreement open. In the enumerated findings, he said May 23, 2003. Well, I don't know what that means to leave the disagreement open. It means I have other issues that are important. You mean, okay, guys, do whatever silly thing you want. I'm going on to another issue. No, I'll keep debating it. No, no, that's okay. He certainly acted like he was reopening it. He did say I'm not, but then he did. And he did reconsider everything, and he had the medical expert reconsider everything, and he said it's an integral part of the decision. Well, even if he did – well, there's the other issue here that the government raises in its blue brief. Or red brief, I'm sorry, in its answering brief. Which is, you know, age, the change in age category under the regulations could have constituted a basis. It's a change of circumstance. Yes, to reopen, correct? True. Now, he didn't address that. It overcomes race judicata, but it doesn't necessarily reopen the earlier claim. Well, the government talks – there's one part in the government's brief where the government talks about for the limited period of time when she turned age 50 before she – the benefit period expired. Right. That would be an – it would have been a basis in which to reopen for that limited period. It would overcome race judicata. Right, for the limited period, correct? Well, it would overcome race judicata. It wouldn't reopen the earlier claim because she changed age in 2005 before her date last insured. So what's the difference between race judicata and reopening? Well, we still have an active claim if her condition changed after, right? The – she has up until June of 2005 to prove disability. So if her condition worsened, as the lay witnesses said and as she testified, then there would be an overcoming of race judicata. It wouldn't reopen the earlier claim. She could only be paid benefits. So you're – so from your perspective, age doesn't make – the fact that she moved into a higher age category makes no difference from your – No, it does, sure. I mean, it is a change of – it's a change of age category. That's a change of circumstances under Chavez. Was Ms. Oberg represented in the second application before the Appeals Council and before the district court? Yes, she was. Okay. Why wasn't this change in age raised? Well, I was not the attorney at that time. They did not raise it. It's true. And it wasn't raised in the opening brief. Well, I was – Not really. Well, I did talk about change of circumstances as a category, but was it her age? I mean, the governors raised it and briefed it. Yeah, and I responded, yeah, that constitutes a change of circumstances. The trouble is the grid rule that would govern it as a background doesn't make any difference. Correct. Right. So her change in age is technically a change of conditions, but I didn't know that that would carry the day. And since my colleagues didn't raise it clearly before, I didn't until they did. And then I pointed out, well, that could be one more factor. Does that mean that there would be no manifest injustice to not consider this waived argument? Because it's not going to make a difference on the grid as to whether she's disabled. Well, we don't know because we don't have V.E. testimony. In fact, we don't even have V.E. testimony at all. That is, the ALJ chose the V.E.'s testimony conclusion from before, but didn't actually include any V.E. testimony in the record for review. For the current application. Well, he judged the current application based on the prior V.E.'s conclusion. There was no additional evidence that was presented other than a medical expert's testimony and the one medical report. Well, the lay witness testimony is very important. That was presented to the appeals counsel. True, but they mishandled it. But she didn't have medical coverage. She had no insurance. So it's not surprising there was no additional medical evidence. You know, it's interesting. People make that argument to us, and we do have some cases that say, well, poor person didn't have insurance. And then I've got this strange thing in my head that there's all kinds of ways to get medical care, even if you don't have anything. Well, I rely on the gamble versus chater holding saying. I understand what you're relying on. I understand it perfectly. But it's a very strange concept to start with when you realize that people of all kinds, and then you go to county hospital, all kinds of ways to get treatment if you really, really suck. No? Well, she has such an odd disorder, the somatoform disorder, which the medical expert did credit. I hope I've answered your question on manifest injustice. I'm sorry, Your Honor. But let me get to the medical expert testimony. The ALJ gave three choices to the medical expert. Is there an underlying autoimmune disorder? Is there a psychiatric disorder? Or number three, is there just no objective evidence and she's not credible? He said the second. And the ALJ had collapsed in his grammar, the first two choices. But we know the medical expert wanted the psychiatric because he spent several pages talking about the psychiatric. Actually, I'm still curious. Is there any manifest injustice if the panel doesn't consider a waived argument here? Well, I'm going to say there's manifest injustice. And why? Is it a procedural one? It sounds like substantively it's not going to change the outcome. It's purely procedural because the age change did constitute a change of circumstances under Chavez as a matter of law. And is that enough? Is a procedural violation or whatever you want to call it, is that sufficient for manifest injustice? Or is there sort of like a harmless error sort of prejudice consideration in manifest injustice that it actually has to have a substantive change? Well, if it's a purely technical error, then that could be a manifest injustice. That's my argument. That Chavez says if there's any change in circumstances, and there's a number of cases that do have age category changes, so it can technically constitute a change so that it would undo res judicata. We're out of time. I apologize. Thank you. That's okay. Thank you. Thank you. Good morning, Your Honors. Gerald Hill for the Commissioner of Social Security. On the question of the difference between res judicata and reopening, the res judicata issue looks forward to the preclusive effect of the first ALJ's decision. We're talking about claim or fact preclusion. Is that right? Right. That's really what we're talking about. Right. Right. So the preclusive effect, well, I guess we're talking about both. We're talking about the preclusive effect of the ALJ's first ultimate disability decision, and then also for that period after Ms. Oberg turned 50 years old, then the preclusive effect of the ALJ's specific findings under the five-step sequential evaluation process. And this is the method set forth in acquiescence ruling that responds to the Chavez case. So it's not simply that there's been a change of age category and then there's no res judicata principles that apply. Well, let me ask you this. Even though the counsel didn't raise the change in age category in his opening brief, you addressed it pretty thoroughly. Yes. Why shouldn't we waive the waiver? Well, we argued it's waived under the case law. I understand. But you went ahead. I mean, I'll give you credit. I mean, you did a good job. I don't mean, you know, the old saying, you know, no good deed, no done. But it's true. I felt like we – This is serious. I mean, you know, I say that lightly, but this is serious because this applicant is, you know, she's age – I mean, she's – the time period in which she's eligible for Social Security benefits is now gone. It's expired. So for her, this is serious. I'm just curious. Oh, yes. Well, I guess the reason that it need not be waived is also the reason that if it's not waived, she doesn't prevail on the merits. So it doesn't work a manifest injustice. So I guess from our perspective, from the commissioner's perspective, it's not going to matter whether it's waived or not because if it's not waived, the ALJ – the second ALJ still had to give some res judicata consideration to the first ALJ's findings. And that is because the change in age was not material to any of those specific findings. And that's a legal question. That's because the age would only relate to how you work out the grid? That's one reason. It could also impact transferability of skills. Maybe that's encompassed in the grid rule. But under the transferability of skills regulations, they talk about how for a person of advanced age, transferability is diminished. But her category is approaching advanced age. So she's not covered by that regulation. And then also a person that has a limited work experience in her over 50 age category might be impacted as well under the age regulation. But she doesn't have a limited work experience. She worked seven years as a nurse, which is a skilled occupation, and then she had a couple other occupations as well. Would your client be prejudiced if we were to waive the waiver and consider the change in age category? No. Not that I can see. Because there's nothing that's going to do anything else with this decision. If we were to send it back to the ALJ, what would happen? Well, I don't think there's any reason to send it back. So I guess that's what I mean by wouldn't be prejudiced. Well, let me just ask you theoretically. Suppose we were to send it back to the ALJ. Well, it wouldn't result in any difference in V.E. testimony because the age doesn't impact the V.E.'s testimony. It doesn't impact the Step 5 consideration under the regulations and the applicable framework grid rule. So her change in age category just doesn't have any impact on her ability to adjust to other work. So not material to the first ALJ Step 5 finding. Would the declarations that she submitted to the Appeals Council, could the ALJ then consider those? If there was a remand, they could be considered. But I don't think that themselves, they don't provide a reason to remand the case. No, but not by themselves. Everything would be considered. Everything is on the table on a remand generally unless the court would limit the issues. But they could be considered on remand certainly. In terms of the Appeals Council letters, it rather looks as if those witnesses, the Appeals Council is a little bit wrong in saying they're only considering the period after. But setting that aside, they look like they were considering the whole period before. It didn't look like there was anything unique to the new period. Am I wrong? The period after 2005? Yeah, it looks as if it goes back to day one, into the old one even. Into the old prior period. You're talking about what the- No, the witnesses. Oh, the witnesses. Two witnesses, yeah. Yes. My review of those affidavits or those declarations would lead me to think that they're talking about the period, the unadjudicated period and into the first period as well. So I don't necessarily have the same view that the Appeals Council had about what period those affidavits apply to. It looks like you're covering the whole period. Yeah, I would agree with that. Everything, right? But I don't think that is a basis to remand for consideration. I think that I have a different view of them than the Appeals Council, but I think the Appeals Council's action is not subject to judicial review, as the district court found. Since this case was brief, there's a new Ninth Circuit decision, the Taylor v. Astruz case, that the court may or may not be familiar with, 659F3-1228. And I just have to concede that case is not favorable to my argument here. But I think the court cited our regulation that allows submission of evidence to the Appeals Council as authority for remand to the ALJ to consider what the Appeals Council didn't consider in that case. And at the same time, the court held that the Appeals Council action is not subject to judicial review. And I'm not personally able to square those legal points, but that's what the court did in the case. And the commissioner's position is that if the court is considering a remand for the ALJ to consider these declarations, that the authority to do that has to be found in 42 U.S.C. 405G. And our argument is that those declarations would have to be material, and they'd have to be good cause for not submitting them to the ALJ when the case was before him. And the case for that proposition is the Matthews case in the Third Circuit that's cited in the brief, also Judge Reimer's concurring opinion in Angst v. Astruz. That's an unpublished case, 2009 Westlaw 360218, page 2. And I also think I qualified my briefing on the Mays case that's in the brief, this court's published decision. I looked at that case again last night. I think it may stand for the authority that for the proposition that good cause and materiality are required before the court may remand for consideration of evidence not submitted to the ALJ. I just have one last question for you. Counsel started off this morning, when he started his argument referring to the finding that the second ALJ made regarding the period of time and issue, went back to May 23 of 2000. May 2003. And he said, wow, that shows that the ALJ maybe not expressly but impliedly reopened the prior proceeding. Do you agree with that? I do not agree that he reopened. What was that all about then? Well, that was the date that she alleged she became disabled, and so that was the date that the ALJ considered. But he based his determination that she was not disabled from that date on an express invocation of res judicata. And so as I wrote in the brief following this court's suggestion in the Crumpleman case and also the Seventh Circuit opinion in Coates, the court should not interpret that as a de facto reopening. There's a difference between adjudication of disability on the merits and determination of disability on res judicata principles. So even though that's the period at issue, I think we have to read a little more closely about what the ALJ was doing and why before we decide that a prior decision has been reopened. So we urge the court to follow the Crumpleman rationale and the Coates Seventh Circuit rule on this. And when there's been no express reopening and express invocation of res judicata, then there should not be a de facto reopening, especially here where none of the conditions in the commissioner's reopening regulation are shown to exist. So if the court doesn't have any other questions, the commissioner asks that the court affirm the judgment of the district court affirming the ALJ's decision. Okay, thank you. Thank you. Thank you, counsel. We appreciate your arguments.
judges: Koh, Fernandez, Paez